IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DERON McCOY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12-3160-CM |
| ) | |
| TYSON MYERS, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER

Plaintiff Deron McCoy filed a pro se complaint pursuant to 42 U.S.C. § 1983 alleging that members of the Hutchinson Police Department, individually and in their official capacity, violated his constitutional rights when they used excessive force during his arrest. (Doc. 1.) Plaintiff was granted leave to amend his complaint and named the following five individuals as Hutchinson police officers: Tyson Meyers, Darrin Pickering, Brice Burlie, Jeramy Hedges, and Corey Graber. (Doc. 15.) Hedges and Graber assert that they are not Hutchinson police officers but are, rather, Reno County sheriff's deputies. This matter is before the court on Hedges and Graber's Motion to Dismiss (Doc. 29) and Meyers, Pickering, and Burlie's Motion to Dismiss (Doc. 35).

Plaintiff's lawsuit arises from events that transpired when plaintiff was arrested at a hotel in Hutchinson, Kansas on March 22, 2011. In his Second Amended Complaint, plaintiff set forth his account of what happened during the arrest, alleging that the officers twice beat and choked him into unconsciousness. (Doc. 15 at 4.) Plaintiff claims this force was excessive in violation of his Fourth Amendment rights.

**I.  Legal Standards**

  **A.  Motion to Dismiss**

The court will grant a 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008). The allegations must contain facts sufficient to state a claim that is plausible, rather than merely conceivable. *Id*. "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court construes any reasonable inferences from these facts in favor of the plaintiff. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

### B. Judicial Notice

In his Second Amended Complaint, plaintiff referenced the fact that he went to trial in Reno County District Court "for the criminal charges that arose from the events that happen [sic] on March 22, 2011" and was found guilty "of several charges which included several counts of aggravated assault of a [law enforcement officer]." (Doc. 15 at 5.) Defendants ask the court to take judicial notice of plaintiff's state criminal proceeding, attaching certified copies of the following court documents from plaintiff's criminal trial: the completed verdict form, plaintiff's motion to dismiss, the state court's opinion denying plaintiff's motion to dismiss ("the Opinion"), and the sentencing journal entry. (Docs. 30-1–30-5.)

In evaluating a motion to dismiss, the court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint. *Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008). However, a court may take judicial notice of facts that are a matter of public record and of state court documents. *Tal*, 453 F.3d at 1264 n.24 (10th Cir. 2006); *Pace v. Swerdlow*,

519 F.3d 1067, 1072 (10th Cir. 2008).  "[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (citations omitted).  The court does so without converting a motion to dismiss into a motion for summary judgment.  *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004) (citations omitted).

As pleaded in his Second Amended Complaint, plaintiff's state criminal proceeding is directly related to the instant lawsuit because that proceeding arose from the events that occurred during plaintiff's arrest, which is the incident about which plaintiff complains here.  The court therefore takes judicial notice of the certified state court documents provided by defendants.

**II.     Analysis**

According to plaintiff, on March 22, 2011, he occupied a hotel room with his sister and his seven-month-old infant when police were dispatched "for a possible child custody dispute."  (Doc. 15 at 2.)  Plaintiff describes that the police officers attempted to contact plaintiff inside the room and, when they were unsuccessful, the officers cut off electrical power for a one-block radius.  (*Id.* at 4.)  Plaintiff claims that defendants then entered the hotel with weapons drawn and that, once in the room, defendants twice beat and choked him—once when he was face down on the floor with his hands behind his back, and then again after his feet were zip-tied and he was placed in a chair.  (*Id.*)  Plaintiff alleges that he did not fight the officers or otherwise attempt to resist arrest.  (*Id.*)

Ultimately, plaintiff was convicted by a Reno County jury of kidnapping, aggravated assault, aggravated endangerment of a child, drug possession, and criminal possession of a firearm.  Plaintiff also was convicted of five counts of aggravated assault on a law enforcement officer in violation of Kan. Stat. Ann. § 21-3410 against the following five individuals:  defendants Pickering, Graber, and

-3-

Burlie, Deputy Matt Tatro, and Sergeant Brian Hirt.[1]  (Doc. 30-4.)  Plaintiff is currently serving his sentence for these crimes.

### A.  Official Capacity Claims

Defendants argue that plaintiff fails to state a claim against them in their official capacities. Plaintiff concedes he has failed to set forth allegations that these defendants are liable in their official capacities and withdraws any such clams.  (Doc. 33 at 2; Doc. 37 at 2.)  Accordingly, to the extent plaintiff has sued these defendants in their official capacities, those claims are dismissed.

### B.  *Heck v. Humphrey*

Defendants argue that plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Court held:

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck*, 512 U.S. at 487.  Defendants maintain that plaintiff's claims of excessive force must be dismissed because a judgment in his favor would invalidate his convictions for aggravated assault on law enforcement officers.

In *Cook v. Olathe Medical Center., Inc*,—a case not mentioned by defendants— the plaintiff was convicted in state court of driving under the influence and battery on a law enforcement officer. 773 F. Supp. 2d 990, 997 (D. Kan. 2011).  In her § 1983 case, the plaintiff claimed the defendants used excessive force while 1) she was being transported by ambulance to the hospital[2] and 2) while she was

---

[1] Deputy Matt Tatro and Sergeant Brian Hirt are not named in this lawsuit.
[2] The plaintiff claimed that, while she was compliant, handcuffed, and strapped to a stretcher, officers started feeling around, checking her pockets and pinching, squeezing and holding her down, choking her, and that she suffered bruises on her arms as a result of their actions.  *Cook*, 773 F. Supp. 2d at 1099.

at the hospital.³  The defendant police officers argued that a judgment in favor of the plaintiff on her § 1983 claim would necessarily imply that her battery conviction was invalid.

The *Cook* court rejected this blanket argument and instead looked to the evidence presented in the plaintiff's underlying criminal trial.  *Id.*  The court concluded that the record was unclear as to when the acts of battery against the officers occurred in relation to when the alleged excessive force occurred.  *Id.*  This was important because, to the extent the plaintiff's conviction for battery on a law enforcement officer was based on evidence that she battered the officers while struggling against them in the ambulance, *Heck* would bar plaintiff's claim that defendants used excessive force against her in the ambulance, but not necessarily her claims that defendants used excessive force at the hospital.  *Id.* at 1015–16 (citing *Hudson v. Hughes*, 98 F.3d 868, 873 (5th Cir. 1996); *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008); *Pratt v. Giroir*, No. 07-1529, 2008 WL 975052, at *5 (E.D. La. April 8, 2008)).  As the court explained: "[I]f the jury convicted plaintiff based on her conduct in the ambulance, a finding in this action that the officers used excessive force against her at the hospital would not necessarily imply that her conviction is invalid."  *Id.*  (citing *Bush*, 513 F.3d at 498).  In the end, the court could not determine on the record which facts comprised the basis for the jury's conviction for battery of a law enforcement officer and, as a result, denied summary judgment.  *Id.*; *see also Robbins v. Chronister*, No. 97-3489-JWL, 2000 WL 1389616, at *4 (D. Kan. July 28, 2000) ("[T]he court believes that there is simply nothing inherently inconsistent between plaintiff's conviction for attempted aggravated assault of [] a law enforcement officer, and plaintiff's contention that, prior to the conduct for which he was convicted, [the officer] utilized unlawful force in an attempt to effect an otherwise lawful arrest.").

---

³ The plaintiff claimed the officers used excessive force at the hospital when they held her down for blood and urine draws.  *Id.*

In this case, there is little record evidence related to the circumstances of plaintiff's aggravated assault on law enforcement officers convictions and, as such, the court cannot determine on what facts the jury relied in convicting plaintiff.  For example, the court does not have the benefit of the trial transcript, jury instructions, or any evidence establishing when plaintiff committed the aggravated assault on the law enforcement officers in relation to when the alleged excessive force occurred.[4]  The court has only plaintiff's allegation that his aggravated assault convictions were based on his actions in refusing to come out of the hotel room—not on his actions during the time he was being placed under arrest.  (Doc. 15 at 5.)  Therefore, on this record, the court cannot say as a matter of law that a finding the officers used excessive force *during* plaintiff's arrest would necessarily invalidate plaintiff's conviction for aggravated assault against law enforcement officers—the excessive force may have occurred after the aggravated assault was over.  *See Pratt*, 2008 WL 975052 at *5  (concluding that *Heck* does not preclude excessive force claim temporally and conceptually distinct from factual basis for conviction).  This especially applies to defendants Meyers and Hedges because plaintiff was not convicted of assaulting these two officers, so there is no basis for the court to conclude that a successful § 1983 action against Meyers and Hedges would invalidate any of plaintiff's aggravated assault convictions.

The court cannot determine which facts comprised the basis for the jury's convictions for aggravated assault on a law enforcement officer.  As a result, the court cannot conclude that a successful resolution of plaintiff's § 1983 excessive force claim would necessarily invalidate his state court assault convictions.  Accordingly, the court denies defendants' motions to dismiss on the basis of *Heck*.  *See Cook*, 773 F. Supp. 2d at 1015.

### C.  Issue Preclusion

---

[4] Indeed, the court generally would not expect such evidence on a motion to dismiss.

Defendants also argue that plaintiff's § 1983 claim is barred by the doctrine of issue preclusion because, they claim, the issue of the officers' excessive force already has been adjudicated. In his state court case, plaintiff filed a pretrial motion to dismiss on the basis that the police officers' conduct was "so extreme and violent that [his] rights to Due Process were violated." (Doc. 30-2.) After a hearing on the matter, the state court judge issued the Opinion, stating that "the actions of the Hutchinson Police Department in effectuating the arrest of the Defendant [were] justified and reasonable under the circumstances. The police conduct was not extreme and violent and does not offend or shock the conscience of the Court." (Doc. 30-3 at 1.) Defendants maintain that, because the state court judge decided the issue of excessive force, plaintiff is barred from re-litigating the issue.

Under the full faith and credit statute,[5] "federal courts generally must give the same preclusive effect to a state court judgment that the judgment would have received in the courts of that state." *Carter v. City of Emporia, Kan.*, 815 F.2d 617, 619 (10th Cir. 1987). In Kansas, "[i]ssue preclusion prevents a second litigation of the same issue between the same parties, even when raised in a different claim or cause of action." *In re Application of Fleet for Relief from a Tax Grievance in Shawnee Cnty.*, 272 P.3d 583, 589 (Kan. 2012). Three elements are required for issue preclusion: 1) a prior judgment on the merits that determined the parties' rights and liabilities on the issue based upon ultimate facts as disclosed by the pleadings and judgment; 2) the same parties or parties in privity; and 3) the issue litigated must have been determined and necessary to support the judgment. *Id.*

In this case, the court cannot say as a matter of law that plaintiff's excessive force claim has been fully litigated. The court recognizes the state court's finding of justification and reasonableness, but at that time plaintiff's attorney was arguing that plaintiff's substantive due process rights under the Fourteenth Amendment were violated, claiming that the police methods "shock the conscience or offend the collective sense of the justice of this court." (Doc. 30-1 at 1.) In this lawsuit, plaintiff is

---

[5] 28 U.S.C. § 1738.

arguing that his Fourth Amendment rights were violated, and those claims are analyzed using an objective reasonableness standard. *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). This distinction is important because the test for excessive force under the Fourth Amendment (objective reasonableness) is significantly different than the test under the Fourteenth Amendment (shocks the conscience). *Arnold v. Curtis*, 359 F. App'x 43, 49 (10th Cir. 2009) (comparing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) with *Graham*, 490 U.S. at 397). Because the level of egregiousness needed to establish a violation of plaintiff's substantive due process is much higher, it is possible to find an officer's actions did not shock the conscience but were nonetheless objectively unreasonable. *Arnold*, 359 F. App'x at 49 (10th Cir. 2009) (citing *Bangert Bros. Constr. Co. v. Kiewit W. Co.*, 310 F.3d 1278, 1290 (10th Cir. 2002)).

The court cannot determine on this record whether plaintiff had a full and fair opportunity to litigate the issue of excessive force under the Fourth Amendment's standards. The court does not have a transcript of the pretrial hearing, so the court does not know what evidence was presented or what arguments were made by counsel. The documents provided by defendants do not disclose whether the trial judge considered issues and evidence related to objective reasonableness—as opposed to shocks the conscience—and the court cannot determine on what ultimate facts the trial judge relied in issuing the Opinion. Lacking a full record, the court cannot say that plaintiff is precluded from litigating the issue of objective reasonableness. The court concludes that issue preclusion does not bar plaintiff's Fourth Amendment excessive force claim.[6]

### D. Qualified Immunity

---

[6] This is especially true with regard to defendants Hedges and Graber, who are Reno County Sheriff's deputies. In the Opinion, the state court trial judge made written findings only with respect to "the actions of the Hutchinson Police Department." (Doc. 30-3 at 1.) The state court trial judge never mentioned in the Opinion the Reno County Sheriff's Department or its deputies. Thus, the court cannot determine whether the state court trial judge actually considered the conduct of *all* the officers allegedly present during plaintiff's arrest (both Hutchinson police officers and Reno County deputies) and simply failed to appreciate that some of the arresting officers were not Hutchinson police officers, or whether the state court trial judge was presented with evidence only related to the conduct of the Hutchinson police officers. To the extent the latter is the case, there would be no issue preclusion as to defendants Hedges and Graber.

Defendants argue that they are entitled to qualified immunity. The doctrine of qualified immunity protects government officials who perform discretionary government functions from liability for civil damages and the obligation to defend the action. *See Johnson v. Fankell*, 520 U.S. 911, 914 (1997); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This immunity is only applicable, however, if the official's conduct did not violate clearly established constitutional or statutory rights that would have been known by a reasonable government official. *See Harlow*, 457 U.S. at 818; *McFall v. Bednar*, 407 F.3d 1081, 1087 (10th Cir. 2005). "In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (citing *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011)). Moreover, the inquiry is not whether the general right to be free from excessive force is clearly established—because it is—the inquiry is whether plaintiff had a clearly established right under the particular facts of this case. *Long v. Fulmer*, 545 F. App'x 757, 760 (10th Cir. 2013).

In resolving an excessive force question in the context of qualified immunity on a motion to dismiss, courts consider and balance three factors: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to flee." *Id.* (citing *Morris v. Noe*, 672 F.3d 1185, 1195 (10th Cir. 2012), and *Graham*, 490 U.S. at 396).

In his Second Amended Complaint, plaintiff included a lengthy narrative setting forth his view of the events that transpired when he was placed under arrest, specifically alleging the following:

- Pickering choked plaintiff until he was unconscious and stopped breathing;

-9-

- Meyers, Pickering, Burlie, Hedges, and Graber severely beat plaintiff while he was face-down on the ground, being held down, and not resisting arrest or fighting;

- Meyers choked plaintiff while he was handcuffed with his hands behind his back and ankles zip-tied; and

- Meyers, Pickering, Burlie, Hedges, and Graber beat plaintiff while he was in a chair handcuffed with his hands behind his back and ankles zip-tied.

(Doc. 15 at 6–7).[7]

In considering the first factor, the court views crimes such as kidnapping, aggravated child endangerment, and aggravated assault to be severe crimes. Accordingly, the court concludes that the severity of the crimes plaintiff committed weighs against plaintiff's claim that he was subjected to excessive force.

However, with regard to the second factor, the record before the court is inconclusive regarding the extent to which plaintiff posed an immediate threat to the safety of the officers or others. For instance, in the Opinion, the state court trial judge stated that, when the officers tried to take plaintiff into custody, plaintiff attempted to grab one of the arresting officer's weapon. (Doc. 30-3 at 1.) In response, plaintiff points to the fact that the Opinion was issued before the trial commenced, and plaintiff claims that the allegation—that he attempted to grab an officer's gun—was proven untruthful at trial. (Doc. 33 at 8; Doc. 37 at 7.) On a motion to dismiss, and without the benefit of the trial transcript, the court cannot determine whether this allegation was in fact disproven at trial.

Similarly, plaintiff maintains (over and over) that he never threatened the officers, resisted arrest, or otherwise tried to flee, and he claims that defendants admitted this fact at trial. (Doc. 15 at 5.) Accepting as true all well-pleaded facts and viewing all reasonable inferences in plaintiff's favor,

---

[7] Defendants erroneously argue that plaintiff failed to adequately plead their individual conduct.

the court cannot say on this record that plaintiff was resisting arrest or attempting to flee during the time he was allegedly beaten. Accordingly, for purposes of these motions to dismiss, the court determines that plaintiff has pleaded enough facts to plausibly suggest that the amount of force used by the defendants was not objectively reasonable. As such, plaintiff has properly alleged an excessive force violation for purposes of the first step of the qualified immunity analysis.

With regard to the second step, plaintiff alleges that he was twice beaten into unconsciousness without resistance or provocation. If believed by the jury, the events plaintiff describes are sufficient to support a claim of a violation of clearly established law. *See Rhoads v. Miller*, 352 F. App'x 289, 292 (10th Cir. 2009) (citing *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993) (holding that plaintiff's testimony that officers beat him with flashlights, kneed him in the groin, and shoved him face-first into a wall supported excessive-force claim and showed a genuine issue of material fact precluding summary judgment on qualified immunity); *Frohmader v. Wayne*, 958 F.2d 1024, 1026 (10th Cir. 1992) (holding that assaultive behavior against an arrestee by an officer could not be determined to be objectively reasonable as a matter of law); *Austin v. Hamilton*, 945 F.2d 1155, 1157–58 (10th Cir. 1991) (holding that, under arrestees' version of the facts alleging repeated assaults without provocation, no reasonable officer could have believed such treatment to be constitutionally permissible), *abrogated on other grounds by Johnson v. Jones*, 515 U.S. 304, 309 (1995); *Dixon v. Richer*, 922 F.2d 1456, 1463 (10th Cir. 1991) (holding that it was not objectively reasonable for an officer to choke and beat a detainee where the detainee was not threatening the officer)).

The court concludes that application of the qualified immunity doctrine is not appropriate at this stage in the litigation. The parties should present the court with a record that includes well-developed facts so the court can properly determine whether defendants are qualifiedly immune.

Without such a record, the court cannot conclude that defendants are entitled to qualified immunity. Dismissal is therefore not proper in these circumstances.

**IT IS THEREFORE ORDERED** that defendants' motions to dismiss (Docs. 29 and 35) are denied.

Dated this 20th day of February, 2015, at Kansas City, Kansas.

<u>s/ Carlos Murguia</u>
**CARLOS MURGUIA**
**United States District Judge**